**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARMEN IXABEL GÓMEZ-BELLIDO<br><br>        Plaintiff,<br><br>              v.<br><br>VACUNAS BRIGHT CENTER, INC. and<br>DANIA COLON ALVARADO<br><br>        Defendants. | **Civil No. 24-1202 (GMM)** |

<u>**OPINION AND ORDER**</u>

Before the Court is Defendants Vacunas Bright Center, Inc.'s ("Vacunas") and Dania Colón Alvarado's ("Ms. Colón") (collectively, "Defendants") *Motion for Summary Judgment and Memorandum of Law in Support of Motion for Summary Judgment* ("*Summary Judgment Motion*"). (Docket No. 35). For the following reasons, Defendants' *Summary Judgment Motion* is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Between October 2020 and March 2023, Plaintiff Carmen Ixabel Gómez-Bellido ("Ms. Gómez") worked as a Registered Nurse at Vacunas in Ponce, Puerto Rico. (Docket No. 1 at 1, 3, 6). Ms. Colón owns Vacunas. (Id. at 1). She and Ms. Gómez worked alongside Wesley Quirindongo Rodríguez ("Mr. Quirindongo"), a Purchasing Manager at Vacunas. (Id. at 1-2). Together, Ms. Colón and Mr. Quirindongo –

Civil No. 24-1202 (GMM)
Page -2-

as alleged in the *Complaint* – sexually harassed Ms. Gómez for nearly two years.

Ms. Gómez reports that the sexual harassment began in March 2021, when Mr. Quirindongo "started to look at Plaintiff in a[n] inappropriate manner." (Id. at 3). Ms. Gómez alleged that Mr. Quirindongo "maliciously and intentionally touched plaintiff's buttocks with his private part" at a vaccination event. (Id.). Ms. Gómez told him to stop; in response, Mr. Quirindongo laughed, claiming that it was unintentional. (Id.). Ms. Gómez alleges that Mr. Quirindongo continued to attempt to grab her breasts on several occasions thereafter. (Id.). On July 17, 2021, during an employee party at Ms. Colón's house, while employees were in the pool, Mr. Quirindongo allegedly "once again maliciously and intentionally touched plaintiff's buttocks." (Id.). Ms. Gómez asked Mr. Quirindongo to stop. (Id.). During this time, Ms. Gómez reports that she did not file a complaint because she was afraid of retaliatory termination by Ms. Colón, who was Mr. Quirindongo's consensual partner. (Id.).

The alleged harassment persisted. On October 20, 2022, upon returning from a staff lunch outing, Mr. Quirindongo exposed himself to Ms. Gómez and urinated in front of her. (Id. at 4). Ms. Gómez reproached his behavior. (Id.). On December 23, 2022, at a staff Christmas party where employees were asked to wear pajamas,

both Ms. Colón and Mr. Quirindongo made comments toward Ms. Gómez regarding "how nice her parts look." Ms. Gómez reported feelings of discomfort and emotional distress as Mr. Quirindongo "told her that she makes him horny." (Id.). In early January 2023, Mr. Quirindongo allegedly sent Ms. Gómez a Facebook message saying that he and Ms. Colón wanted to "have a sexual threesome with her." (Id.). Ms. Gómez rejected the proposition. (Id.). On January 16, 2023, Mr. Quirindongo called Ms. Gómez and "invite[d] her to have sex since his girlfriend Defendant [Ms. Colón] didn't want to be sexually with him." (Id.). Ms. Gómez again rejected the proposition. (Id.). On January 23, 2023, Ms. Colón summoned Ms. Gómez to her office, where she acknowledged Mr. Quirindongo's sexual advances toward Ms. Gómez. (Id. at 5). Ms. Colón then played a voice recording of Mr. Quirindongo claiming to have had sex with Ms. Gómez. (Id.).

This prompted Ms. Gómez to make a complaint to Mr. Negrón, a supervisor at Vacunas, on January 26, 2023. (Id.). Mr. Negrón allegedly responded by asking Ms. Gómez her what she wanted to do and telling her not to alert others that he was informed of the situation. (Id.). No corrective actions were taken. (Id.). As a result, Ms. Gómez alleges having experienced "emotional distress, depression, anxiety, lack of sleep, anguish, and suffering," (id.), as well as "post-traumatic stress disorder, . . . night

Civil No. 24-1202 (GMM)
Page -4-

terrors, and loss of enjoyment of life." (Id. at 6). She sought psychological treatment in February 2023. (Id. at 5).

On February 14, 2023, Ms. Gómez filed an administrative complaint with the Puerto Rico Department of Labor and Human Resources' Anti-Discrimination Unit.[1] (Docket No. 43-4 at 4). On February 17, 2024, Ms. Gómez's psychiatrist "gave her a three (3) month sick leave related to the sexual harassment allegations." (Docket No. 1 at 6). On March 2, 2023, Vacunas fired Ms. Gómez, allegedly, for abandonment of work. (Id.). At some point, Ms. Gómez also filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC"), which issued its Notice of Final Decision on February 5, 2024. (Id. at 2).

Ms. Gómez filed this *Complaint* on May 6, 2024 against Vacunas, Ms. Colón, and Mr. Quirindongo, alleging violation of: Title VII of the Civil Rights Act of 1964; Puerto Rico Anti- Discrimination Act No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 146 ("Law 100"); Puerto Rico Equal Employment Opportunity Act No. 69, P.R. Laws Ann. tit. 29, § 1321 ("Law 69"); Puerto Rico Sexual Harassment Act No. 17 of April 22, 1988, P.R. Laws Ann. tit. 29, § 155 ("Law 17"); and negligence under Articles 1802 and 1803 of the Puerto

---

[1] The Complaint states the administrative complaint was filed February 13, 2023, (Docket No. 1 at 5-6), but the administrative complaint and all supporting documentation reflect February 14, 2023. (Docket No. 48-2 at 4). The Court treats February 14, 2023 as the operative date, finding the one-day discrepancy immaterial to timeliness.

Civil No. 24-1202 (GMM)
Page -5-

Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141-42. *See generally* (id.).

Summary judgment motions were filed by all defendants. Mr. Quirindongo filed his *Motion for Summary Judgment and Memorandum of Law in Support Thereof*, (Docket No. 43), accompanied by a translation of Ms. Gómez's deposition and a copy of Ms. Gómez's EEOC final notice and complaint. (Docket Nos. 43-3; 43-4). Plaintiff agreed with Mr. Quirindongo's assertion that Ms. Gómez claims against him are time-barred and that Plaintiff failed to exhaust administrative remedies, and requested the Court dismiss all causes of actions against him. (Docket No. 50). The Court entered *Partial Judgment* dismissing Mr. Quirindongo's claims on April 17, 2026. (Docket No. 55).

Vacunas and Ms. Colón jointly filed a *Motion for Summary Judgment and Memorandum of Law in Support of Motion for Summary Judgment*, arguing that: Ms. Gómez's tort claims are time-barred as to both Defendants; Ms. Colón cannot be held liable under Title VII because Plaintiff only grieved Vacunas in her EEOC complaint; and Plaintiff's Law 100, Law 69, and Law 17 claims fail to state a claim and cannot stand as a matter of law. (Docket No. 35). As a result, Vacunas and Ms. Colón request this Court to dismiss the tort claims and dismiss all claims against Ms. Colón. (Id. at 6).

Civil No. 24-1202 (GMM)
Page -6-

Plaintiff filed a *Motion in Response for Motion for Summary Judgment* conceding that the tort claims are time-barred but maintained her position as to all other claims. (Docket No. 42). In reply, Defendants filed a *Motion in Response for Motion Adopting by Reference and Supplementing Initial Request for Summary Judgment*, reemphasizing that Ms. Colón received no notice of the administrative complaint and that the Law 17 and Law 69 claims are also time-barred against her. (Docket No. 46).

Plaintiff challenged this assertion in her *Motion in Response for Motion Adopting by Reference and Supplementing Initial Request for Summary Judgment*, arguing that Law 100 establishes that the statute of limitations for employment discrimination is tolled by the filing of an administrative complaint, and this applies equally to Law 69 and Law 17. (Docket No. 51).

The issues are now ripe for disposition.

## II.  LEGAL STANDARD

A. <u>Fed. R. Civ. P. 56</u>

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed R. Civ. P. 56.

An issue is genuine when it is dispositive; a fact is material it has the potential to affect the outcome of the suit. <u>Farmers</u>

Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011). The movant bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The Court must view the record in the light most favorable to the non-movant and draw all reasonable inferences in their favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The entire record includes pleadings, depositions, and any other admissions on file. Calderon Amezquita v. Rivera-Cruz, 483 F. Supp. 3d 89, 101 (D.P.R. 2020). Questions of credibility and fact-finding are reserved for a jury. Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The Court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Ultimately, summary judgment is inappropriate where "the evidence on record is sufficiently open-ended to permit a rational fact finder to resolve the issue in favor of either side." Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013) (internal quotations omitted).

   B. Loc. Civ. R. 56

Motions for summary judgment are also governed by Local Civil Rule 56. Loc. Civ. R. 56; see also López-Hernández v. Terumo P.R. LLC, 64 F.4th 22, 26 (1st Cir. 2023). Local Rule 56 mandates that

Civil No. 24-1202 (GMM)
Page -8-

a motion for summary judgment "be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." D.P.R. Loc. R. 56(b). That rule also demands that the party opposing the movant's motion must submit "with its opposition a separate, short, and concise statement of material facts" which "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. 56(c). "Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation . . . ." Id. If any fact is not supported by "a citation to the specific page or paragraph of identified record material supporting the assertion," the court may "disregard" the unsupported statement. Id. 56(e).

Where a supported fact is not properly controverted, it "shall be deemed admitted." Id.; Quintana-Dieppa v. Dep't of Army, 130 F.4th 1, 8 (1st Cir. 2025). The Court has "no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." L. Civ. R. 56(e). This is known as an "anti-ferret rule," which is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and

Civil No. 24-1202 (GMM)
Page -9-

prevent litigants from shifting that burden onto the court." López-Hernández, 64 F.4th at 26. Litigants ignore the anti-ferret rule at their peril. Rodríguez-Severino v. UTC Aerospace Sys., 52 F.4th 448, 458 (1st Cir. 2022). In the end, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 108 (1st Cir. 2006).

### III. UNCONTESTED FACTS

Plaintiff did not comply with Local Rule 56. The Court finds no document before it that indicates Plaintiff's admission, denial, or qualification of the facts that were submitted by Defendants in support of their summary judgment motion. *See* Loc. Civ. R. 56(c). As such, facts that were not properly controverted are deemed admitted for the purpose of ruling on this motion.

The Court, accordingly, draws the following factual findings from the parties' admissions on the record and those statements of proposed facts submitted by the parties that comply with Local Civil Rule 56. *See* (Dockets No. 35 at 2-3; 51 at 6-7); CMI Cap. Mkt. Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). After thorough review, the Court finds that the following material facts are not in genuine dispute:

1. Ms. Gómez began working as a Registered Nurse at Vacunas in October 2020. (Docket Nos. 1 at 3; 12 at 2 ¶ 7).

Civil No. 24-1202 (GMM)
Page -10-

2.   Vacunas is a corporation organized under the law of Puerto Rico, with an office in Paseo del Sur Plaza in Ponce, Puerto Rico. (Docket Nos. 1 at 1; 12 at 1 ¶ 2).

3.   Ms. Colón is the owner of Vacunas. (Docket Nos. 1 at 1; 12 at 1 ¶ 3).

4.   On July 17, 2021, Vacunas celebrated an employees' party in Ms. Colón's house. (Docket Nos. 1 at 3; 12 at 2).

5.   On December 23, 2022, Vacunas celebrated a Christmas party in its commercial office. (Docket Nos. 1 at 4; 12 at 3 ¶ 13).

6.   On January 23, 2023, Ms. Colón summoned Ms. Gómez to her office. (Docket Nos. 1 at 5; 12 at 3 ¶ 28).

7.   On February 14, 2023, Ms. Gómez filed a complaint with the Puerto Rico Department of Labor and Human Resources' Anti-Discrimination Unit, bearing No. UADAU 23-041 CP/16H-2023-00-131, alleging sexual harassment. (Docket No. 1 at 5-6; 35 at 2; 48-2 at 4-9).

8.   Ms. Gómez filled out the complaint as follows:

> "Vacunas Bright Center" in the box designated for "Name of Employer."
>
> "+15" in the box designated for "No. of Employees."
>
> "Sr. Wesly Quirindongo, Sra. Dania Colón" in the box designated for "Name" under the Employer information section.

Civil No. 24-1202 (GMM)
Page -11-

> "Sex" and "sexual harassment" for the check boxes in the "Cause of Discrimination" section.
>
> "March 2021" to "February 3, 2023" as the range under "Date when the discrimination took place."

(Docket No. 48-2 at 4).

9.   The complaint includes an attachment where Ms. Gómez's describes her allegations of sexual harassment as follows:

> I, Carmen Gómez Bellido, graduate nurse of Vacunas Bright Center since October 2020, hereby declare the following to report undesirable behavior on the part of Mr. Wesly Quirindongo and Mrs. Dania Colón. Mr. Wesly and Mrs. Dania Colón, who are a couple, he is an employee and she is the owner of the company. On several occasions, I was harassed by Mr. Quirindongo. He started to look at me inappropriately. During a vaccination, I bent over and he rubbed my buttocks with his private parts. I looked at him angrily, and he, laughing, said, "It was an accident." On many occasions, he would reach out and grab my breasts, and I always told him to stop doing that. In October 20, we were at a vaccination clinic and went out to lunch in Old San Juan. As we were walking to the van, my coworker Enrique returned to the restaurant, and Wesly said he needed to urinate. Then, right there on the street, he urinated in front of me. On December

Civil No. 24-1202 (GMM)
Page -12-

23, 2022, there was an event at the office where we all wore pajamas, and he and Mrs. Dania (his wife) remarked on how my pants fit me. That same day in my office, he told me I was making him really horny. In early January, he sent me a Facebook message saying that they (Dania and him) talked about having a threesome and that they wanted me to join them. I responded, "What's wrong with you? You're crazy," and that I had a partner. And he replied, "My bad. We'll talk later." On January 16, I received a call from Wesly after 5:00 p.m. He asked me where I was and I told him I was working. Wesly told me he wanted to see me, that Dania didn't want to have sex with him, and that he wanted to be with me. My response was, "You are a real jerk," and I hung up on him. On January 23, Mrs. Dania Colón called me into her office and confronted me asking if something had happened between Wesly and me. I told her to ask a more direct question. Then she told me that he told her we had sex in the Transit van and that on another day we had kissed. Trying to intimidate me, she told me that there was a camera in the Transit van and that she was reviewing all the videos, but she hadn't gotten to that day yet. And I told her, "But if he told you the exact date, look for that date," and that we should conclude the meeting with him present. In the afternoon, she returned without Mr. Quirindongo and met with me again. So, I asked her why he was not there. She asked me once again and played a recording of him saying that we had sex in the Transit van while one of my coworkers was buying

a drink in a bar. I replied, "I don't know what kind of twisted shit he's thinking, but now I ask you: he told me that you guys have sex thinking about me and that in early January he sent me a message saying that both of you wanted to have a threesome with me." She told me, "He told you that? I'm open minded, but I told him not to mix work with our fantasies." I replied, "You noticed how fresh he was acting towards me on Christmas Day, but you didn't do anything. He even pretended he was going to spank me." And she told me that she saw it on camera, revealing that, on numerous occasions, our conversations are of a sexual nature, which highlights their sexual problems. These conversations occurred around other coworkers. I feel prejudiced, considering that Mrs. Colón met with a coworker, Rosa Robles, to warn her to be aware with me and her husband. Mr. Negrón, the supervisor, was aware of these events, given that he noticed I was not being myself, and I shared with him the situation with Mrs. Colón. I have been out of the office since Friday, February 3, 2023, because I had a doctor's appointment and was prescribed rest and treatment in light of the situation.

I hereby seek compensation for damages, pain and mental suffering caused to me and my family. I file this claim under Act No. 100 of June 30, 1959, as amended; Act No. 69 of July 6, 1985; Title VII of the Civil Rights Act of 1964; and Act No. 17 of July 2, 1988.

(Docket No. 48-2 at 5).

10. Ms. Gómez did not return to work at Vacunas after February 3, 2023. (Docket No. 48-2 at 5).

11. On February 5, 2024, the EEOC issued a letter to Ms. Gómez titled "Dismissal and Notice of Rights" informing her that her EEOC claim was terminated and that she had 90 days from receipt of notice to pursue a lawsuit in federal court. (Docket No. 48-2 at 1-3).

12. On May 6, 2024, Ms. Gómez filed the instant federal lawsuit. *See generally* (Docket No. 1).

13. Ms. Gómez reported in her June 17, 2025 deposition that she filed her administrative complaint only as to Vacunas. (Docket No. 38-2 at 10-11).

14. The last incident of alleged sexual harassment occurred in January of 2023. (Docket No. 48-2 at 5).

15. Ms. Gómez did not speak to other employees about the alleged harassment. (Docket No. 38-2 at 10, 12-13).

## IV.  APPLICABLE LAW AND ANALYSIS

At the outset, the Court notes that Plaintiff concedes that her tort claims are time-barred and requested their dismissal. *See* (Docket No. 42). As such, the Court only addresses Ms. Gómez's Title VII, Law 100, Law 69, and Law 17 claims against Vacunas and Ms. Colón.

Civil No. 24-1202 (GMM)
Page -15-

A. Title VII

Defendants argue that Ms. Gómez's Title VII claims fail. Procedurally, Defendants aver that the administrative complaint was filed only against Vacunas, so Ms. Colón did not have adequate notice. *See* (Docket No. 35 at 5). Defendants also challenge the federal complaint's timeliness, as the last complained incident took place at the end of January 2023, and the federal complaint was filed on May 6, 2024, without any sufficient preservation of the claim locally in the interim. (Id. at 5-6). As to the merits, Defendants challenge that there is no basis for employer liability because Ms. Gómez did not mention any of the alleged harassment events to Ms. Colón or others at Vacunas until January 2023. *See* (id.).

1.  Notice and Administrative Exhaustion

The Court takes up first the question of proper procedure before moving to the parties' substantive disputes.

Title VII makes it unlawful for employers to discriminate based on sex and retaliate against those who oppose said discrimination. 42 U.S.C. § 2000e-2(a)(1); id. § 2000e-3(a). An employee must exhaust administrative remedies before filing a Title VII suit in federal court." Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 31 (1st Cir. 2009). This begins with filing an administrative complaint before the relevant agency. Id. Failure

to exhaust administratively, minus limited exceptions, closes the door to federal court. Velázquez-Ortiz v. Vilsack, 657 F.3d 64, 71 (1st Cir. 2011).

An administrative claim must be filed within 180 or 300 days after the "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Puerto Rico is a deferral jurisdiction; therefore, an employee must file the charge within 300 days of the alleged unlawful conduct if she first files with the Puerto Rico Department of Labor; otherwise, an EEOC filing must be made within 180 days. Frederique-Alexandre v. Dep't of Nat. & Env't Res. P.R., 478 F.3d 433, 437 (1st Cir. 2007).

The administrative filing must generally identify the conduct at issue and while it does not determine the scope of the civil action, the ensuing federal suit is generally limited to conduct that grew out of, or could reasonably have been expected to result from, the agency's investigation of the charge. Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990). In addition, "at a minimum it must alert the employer as to the basis of the discrimination claim that the employee seeks to pursue in federal court." Rodríguez-Candelario v. MVM Sec. Inc., 238 F. Supp. 3d 240, 253 (D.P.R. 2017).

Now, turning to the Defendants. As to Ms. Colón, irrespective of exhaustion, Ms. Gómez's Title VII claim must be dismissed.

"[T]here is no individual employee liability under Title VII"; only an employer is liable for the acts of its agents. Fantini v. Salem State Coll., 557 F.3d 22, 31 (1st Cir. 2009). As uncontested by the parties, Vacunas is Ms. Gómez's employer. (Docket Nos. 1 at 3; 12 at 2). While Ms. Colón is the owner of Vacunas, she cannot be held individually liable. *See* id. Accordingly, Ms. Gómez is precluded from suing an individual employee or supervisor in their personal capacity under Title VII. Id. Consequently, this Court **GRANTS** summary judgment to Defendants on this matter.

Because Vacunas, unlike Ms. Colón, is Ms. Gómez's employer, the individual-capacity bar discussed above does not apply to it, and the Court proceeds to determine whether Ms. Gómez sufficiently exhausted administrative remedies in a timely manner.

Ms. Gómez's last alleged sexual harassment incident took place at the end of January 2023. (Docket No. 48-2 at 5). On February 14, 2023, Ms. Gómez filed her administrative complaint with the Puerto Rico Department of Labor and Human Resources, Anti-Discrimination Unit. (Docket No. 1 at 5-6; 35 at 2; 48-2 at 4-9). This filing is well within the statutory time limitations under Title VII.

Moreover, Ms. Gómez's administrative complaint adequately identifies Vacunas as her employer, Ms. Colón and Mr. Quirindongo as the named individuals under the employer section of the form

and provides a detailed attachment summarizing her multiple allegations of sexual harassment against Ms. Colón and Mr. Quirindongo respectively. This satisfies both notice and timing requirements for administrative exhaustion.[2]

## 2.   Sexual Harassment

Having decided questions of procedure, the Court then turns to the merits of Ms. Gómez's Title VII claim against Vacunas.

Various types of actionable sexual harassment claims exist under Title VII, including hostile work environment, quid pro quo, constructive discharge, and retaliation. Gerald, 707 F.3d at 16. Plaintiff does not specify which claims underly her complaint. *See generally* (Docket Nos. 1; 42; 43-8; 51).

At the summary judgment stage, however, it appears Defendants have only challenged Plaintiff's Title VII hostile work environment theory. Because Defendants have not separately developed arguments regarding retaliation, discriminatory discharge, or constructive discharge, the Court limits its analysis to the hostile work environment. Requiring an employee "to work in a discriminatorily hostile or abusive environment" violates Title VII. Gerald, 707 F.3d at 17 (*quoting* Valentín-

---

[2] The Court notes that Plaintiff's *Complaint* does not assert a discrete claim for retaliatory discharge, and Defendants' *Summary Judgment Motion* does not move against such a theory. To the extent the March 2, 2023 termination referenced in the Background could be construed to raise a retaliation claim, that theory is not before the Court on this motion, and this Opinion expresses no view on its viability.

Almeyda v. Mun. of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006)). A hostile work environment is defined as "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Syst., Inc., 510 U.S. 17, 21 (1993). To prevail on this type of sexual harassment claim, a plaintiff must establish: "(1) membership in a protected class and (2) unwelcome sexual harassment, (3) which was based on sex, (4) was sufficiently severe or pervasive, (5) was objectively and subjectively offensive, and finally (6) that some basis for employer liability has been established." Id. (*citing* Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225, 228 (1st Cir. 2007)). Ultimately, however, the First Circuit has held that generally "it is for the jury to decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." Gerald, 707 F.3d at 19.

Although Plaintiff failed to properly controvert Defendants' statement of uncontested facts, Defendants, as the moving parties, retain the burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *See* Celotex Corp., 477 U.S. at 323. The Court therefore examines

whether the facts properly before it establishes Defendants' entitlement to judgment notwithstanding Plaintiff's procedural default. They do not.

As to the first element, Ms. Gómez is a woman, and as such, member of a protected class. Gerald, 707 F.3d at 17.

As to the second through fifth elements, Defendants do not identify record evidence establishing the absence of a genuine dispute concerning the alleged conduct. Rather, their motion principally challenges timeliness, notice, exhaustion, and employer liability. Defendants do not develop the evidentiary record sufficiently to demonstrate that no reasonable jury could conclude that the alleged conduct was unwelcome, sex-based, severe or pervasive, and objectively and subjectively offensive. To the contrary, Ms. Gómez's own sworn administrative narrative, deemed admitted as an uncontested fact under Local Rule 56(e), details a pattern of unwanted touching, indecent exposure, and repeated sexual propositions by Mr. Quirindongo and Ms. Colón over nearly two years which, if credited, would permit a reasonable jury to find the conduct unwelcome, sex-based, and sufficiently severe or pervasive to alter the conditions of Ms. Gómez's employment. Accordingly, Defendants have not established entitlement to judgment as a matter of law on these elements.

Civil No. 24-1202 (GMM)
Page -21-

Only the sixth element — employer liability — was directly challenged by Vacunas. The company argues that it lacked notice of the alleged conduct and therefore cannot be held liable for it. *See* (Docket No. 35 at 5-6). The Court is not persuaded that the present record permits judgment as a matter of law on this issue. Ms. Colón is alleged to have been both the owner of Vacunas and a direct participant in certain incidents forming the basis of Plaintiff's claims. Accordingly, the scope of Ms. Colón's authority, knowledge, and involvement bears directly on the employer-liability analysis. *See, e.g.*, Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 764-65 (1998). Whether Ms. Colón possessed knowledge attributable to Vacunas and whether her alleged conduct may subject the employer to liability present questions that cannot be resolved on the present summary judgment record. *See* Arrieta-Colón v. Wal-Mart P.R., Inc., 434 F.3d 75, 86 (1st Cir. 2006).

In sum, pursuant to Rule 56, genuine issues of material facts preclude summary judgment in the instant case. Specifically, the following issues warrant credibility determinations, weighing of the evidence, and drawing of inferences by a jury at trial:

> (i)   whether the alleged sexual harassment acts by Mr. Quirindongo and Ms. Colón took place and, if so, whether they amounted to sexual harassment in the workplace against Ms. Gómez in the modality of hostile work environment;

(ii)    whether the Vacunas, as the employer, knew or should have known of Ms. Colón's and Mr. Quirindongo's alleged acts;

(iii)   Vacunas' degree of control and any other legal responsibility which it may have with respect to these Defendants, if any;

(iv)    whether Vacunas obtained constructive knowledge of Ms. Gómez's allegations of sexual harassment prior to the filing of the administrative complaint; and

(v)     the adequacy of Vacunas' handling of said complaint regarding the individual Defendants' alleged acts.

Accordingly, genuine disputes of material fact preclude summary judgment on Plaintiff's Title VII hostile work environment claim against Vacunas.

### 3.    Puerto Rico Law Claims of Sexual Harrasment

Ms. Gómez sues Ms. Colón and Vacunas under Puerto Rico's Law 100, Law 69, and Law 17. For similar reasons, Ms. Gómez's Puerto Rico law claims also survive summary judgment against Vacunas, but not against Ms. Colón.

"Law 100 is a general employment discrimination statute, making it unlawful for employers to discharge or discriminate against an employee on the basis of . . . sex [among other protected categories]. P.R. Laws Ann. tit. 29, § 146. This statute is analogous to Title VII in many respects." Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 26 n.10 (1st Cir. 2011) (citing Monteagudo v. Asociación de Empleados del Estado Libre Asociado de

Civil No. 24-1202 (GMM)
Page -23-

P.R., 554 F.3d 164, 169 n.3 (1st Cir. 2009) (describing Law 100 as an analog to Title VII)).

Though Law 100 echoes Title VII, "Law 100 is much more plaintiff-friendly than its federal counterpart." Ruiz v. Caribbean Rests., Inc., 54 F. Supp. 2d 97, 120 (D.P.R. 1999). "The most salient distinction between [Title VII and Law 100] is that Law 100 establishes a rebuttable presumption of discrimination unless the employer can demonstrate that the action in dispute was justified." Colón-Muriel v. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio, 499 F. Supp. 2d 98, 111 (D.P.R. 2007) (*citing* Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 27 (1st Cir. 1998)). This places upon the employer not only the burden of production, but also a burden of persuasion. Id.

Law 69 and Law 17 function similarly. Law 69 proscribes discrimination in employment on the basis of sex. P.R. Laws Ann. tit. 29, § 1321. This includes sexual harassment. Miro Martinez v. Blanco Vélez Store, Inc., 393 F. Supp. 2d 108, 114 (D.P.R. 2005). Law 17 prohibits sexual harassment in the workplace; it mirrors the Title VII sexual harassment law. P.R. Laws Ann. tit. 29, § 155b; Hernández-Loring v. Universidad Metropolitana, 233 F.3d 49, 52 (1st Cir. 2000).

Civil No. 24-1202 (GMM)
Page -24-

Like Law 100, both Law 69 and Law 17 provide for individual liability. *See* Rivera Maldonado v. Hosp. Alejandro Otero Lopez, 614 F. Supp. 2d 181, 197 (D.P.R. 2009) (*citing* Rosario Toledo v. Distribuidora Kikuet, Inc., 151 P.R. Dec. 634 (P.R. 2000)); Burgos-Díaz v. Hosp. Hima San Pablo-Bayamón, 2017 WL 5900540, at *4 (D.P.R. Nov. 29, 2017).

Courts in the First Circuit have consistently recognized that "Law 17, Law 69, and Law 100 serve virtually identical purposes and outlaw virtually identical behaviors." Miro Martinez, 393 F. Supp. 2d at 114; Valentín-Almeyda, 447 F.3d at 96. As such, the Court will consider Ms. Gómez's Law 100, Law 69, and Law 17 claims jointly for the purpose of summary judgment.

These claims must be brought within one year of the last act of sexual harassment; however, "alleging sex discrimination in violation of Title VII" in an administrative complaint "toll[s] the statute of limitations for an equivalent cause of action under Puerto Rico law." Huertas-González v. Univ. of P.R., 520 F. Supp. 2d 304, 316 (D.P.R. 2007) (*quoting* Rodriguez-García v. Mun. of Caguas, 354 F.3d 91, 99 (1st Cir. 2004)).

Puerto Rico courts treat an administrative complaint as an extrajudicial claim that calls for heightened notice standards. Under Puerto Rico case law, "each particular defendant needs to have been notified of the filing of the administrative complaint"

to trigger tolling. Ortiz v. Valdés, 714 F. Supp. 2d 230, 232 (D.P.R. 2010) (*citing generally* León-Nogueras v. Univ. of P.R., 964 F. Supp. 585, 587-88 (D.P.R. 1997); Matos Molero v. Roche Products, Inc., 132 P.R. Dec. 470, 485-86 (P.R. 1993); Cintrón v. Estado Libre Asociado, 127 P.R. Dec. 582, 593 (P.R. 1990); Secretario del Trabajo v. Finetex Hosiery Co., 116 P.R. Dec. 823, 826-27 (P.R. 1986)). An employee must personally notify defendants of these administrative charges and bears the burden of proving said notice was effectuated. *See* Rodríguez Narvaez v. Nazario, 895 F.2d 38, 44 (1st Cir. 1990); *see also* León-Nogueras, 964 F. Supp. at 589-90 ("Because an administrative charge operates as an extrajudicial claim, it must be personally notified to the defendant if it is to have a tolling effect.").

In their *Summary Judgment Motion*, Defendants claim ineffective personal notice against Ms. Colón – not Vacunas – and therefore argue the Puerto Rico law claims are time-barred against her. (Docket No. 35 at 1). Defendants also assert that Plaintiff's state law theories are underdeveloped. (Id. at 2). Plaintiff, in response, argues that the administrative complaint did effectively toll the statute against Defendants but does not controvert Defendants' proposed uncontested fact that Ms. Colón did not receive personal notice. (Docket No. 51 at 3-6). Indeed, Ms. Gómez has not only not contested Defendants' personal notice claim but

has directly affirmed it. During Ms. Gómez's deposition on June 17, 2025, when asked about whether her administrative complaint was "only filed . . . against Vacunas Bright Center [and] the sole defendant [here] is Vacunas Bright," Ms. Gómez answered "yes." (Docket No. 43-3 at 10-11). Ms. Gómez continued to affirm during this deposition that she did not give, nor was aware of, any personal notice given to Ms. Colón. *See* (id. at 10-15).

Since this fact is uncontested, and material to the Court's analysis of notice to toll these statutes, the Court must **GRANT** Defendants' request as to Ms. Colón on all Puerto Rico law claims. The Court recognizes that Ms. Colón was expressly identified by name in the administrative charge and in the accompanying narrative statement, and that she is alleged to have had direct, personal knowledge of the underlying conduct — indeed, to have participated in it. That knowledge, however, goes to the merits of Plaintiff's substantive allegations, not to the distinct procedural question the tolling doctrine requires whether Ms. Colón was personally notified of the filing of the administrative complaint itself. *See* Ortiz, 714 F. Supp. 2d at 232; León-Nogueras, 964 F. Supp. at 589-90. Ms. Gómez's own sworn deposition testimony directly disclaims any such notice, and Plaintiff's opposition offers no record evidence, only a legal argument, to the contrary. On this record, Defendants have carried their burden as to this discrete element,

and Plaintiff's failure to identify any evidentiary basis for personal notice, as opposed to general awareness of the underlying allegations, is fatal to tolling as to Ms. Colón individually.

Plaintiff's state law claims must continue against Vacunas. Ms. Gómez's Title VII claims survived this stage of review. Since Law 100 claims are even more friendly to plaintiffs than Title VII claims, Ruiz, 54 F. Supp. 2d at 120, and Law 69 and Law 17 are analyzed in step with Law 100, Miro Martinez, 393 F. Supp. 2d at 114, Defendants' summary judgment request as to Plaintiff's Law 100, Law 69, and Law 17 claims is **DENIED** as to Vacunas.

## V.    CONCLUSION

For the foregoing reasons, Defendants' *Summary Judgment Motion* is **GRANTED IN PART AND DENIED IN PART**. All tort claims, as well as all claims against Ms. Colón, are **DISMISSED WITH PREJUDICE**. Ms. Gómez's Title VII, Law 100, Law 69, and Law 17 claims against Vacunas continue.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on July 13, 2026.

/s/ Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
United States District Judge